UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KAREN MACE,<br><br>       Plaintiff,<br><br>   v.<br><br>CROUSE HEALTH HOSPITAL, INC,<br><br>       Defendant. | Case No. 5:22-CV-1153 (TJM/ATB)<br><br>**COMPLAINT**<br><br>**ECF CASE** |

COMES NOW PLAINTIFF Karen Mace, by her undersigned attorney, for her complaint against Defendant Crouse Health Hospital, Inc., and alleging as follows:

**NATURE OF THE ACTION**

1. This is an action for religious discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, on the grounds that Defendant failed to reasonably accommodate Plaintiff's sincerely held religious objection to a mandatory COVID-19 vaccination policy, wrongly denied her requested religious exemption, and as a result illegally terminated her employment. Plaintiff asserts a concurrent claim under the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq*. This is not an action challenging the legality of the COVID-19 vaccination policy itself. By this action, Plaintiff seeks all legal and equitable relief available, including reinstatement, back pay, front pay, lost future earnings, out of pocket costs, compensatory damages, punitive damages, and attorney's fees and costs. Plaintiff demands trial by jury.

1

## PARTIES

2. Plaintiff **Karen Mace** is an adult resident of Baldwinsville, New York (Onondaga County). At all relevant times, Mace was an "employee" of Defendant within the meaning of Title VII and applicable state law.

3. Defendant **Crouse Health Hospital, Inc.** ("Crouse Hospital") is a domestic not-for-profit corporation with its principal place of business at 736 Irving Avenue, Syracuse, New York. Crouse Hospital is licensed for 506 acute-care beds and 57 bassinets. Upon information and belief, at all relevant times, Crouse Hospital had more than 500 employees. At all relevant times, Crouse Hospital was Plaintiff's "employer" within the meaning of Title VII and applicable state law.

## JURISDICTION AND VENUE

4. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) and 42 U.S.C. § 2000e-5(f)(3) (Title VII).

5. This Court has supplemental jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. § 1367, because Plaintiff's federal and state law claims derive from a common nucleus of operative facts and form part of the same case or controversy under Article III of the U.S. Constitution.

6. This Court has venue over this action pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2) and 42 U.S.C. § 2000e-5(f)(3) (Title VII), because Defendant resides in this judicial district and a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## ADMINISTRATIVE EXHAUSTION

7. Plaintiff properly exhausted her administrative remedies under Title VII prior to filing this action.

8. On or about December 10, 2021, within 180 days of the alleged discriminatory acts, Mace filed a charge of discrimination against Crouse Hospital with the U.S. Equal Employment Opportunity Commission (EEOC). The charge was assigned charge number 525-2021-01557.

9. On September 7, 2022, the EEOC issued a Notice of Right to Sue, a copy of which is attached hereto as **Exhibit A**.

10. This action was filed within 90 days of Mace's receipt of the Notice of Right to Sue.

11. There are no administrative exhaustion requirements for Plaintiff's claim under the New York State Human Rights Law.

## ALLEGATIONS

12. Mace was hired by Crouse Hospital on July 21, 2008.

13. Mace worked as a Certified Surgical Technician. A certified surgical technician, also commonly referred to as a certified surgical technologist, is a health care professional who provides surgeons and patients with support before, during, and after surgery.

14. Mace's job duties included: preparing the operating room for surgery; sterilizing, organizing, and preparing surgical instruments; disinfecting surgical sites and preparing patients for surgery; handing surgeons surgical instruments; dressing surgical incisions; and maintaining a sterile environment for surgeons and patients.

15. At all relevant times, Mace was qualified for her position and performed her duties in a satisfactory manner.

*Crouse Hospital's COVID-19 Vaccination Policy
and Mace's Religious Exemption*

16. On or about August 12, 2021, Crouse Hospital announced that, effective September 13, 2021, all employees "will need to be vaccinated or will be required to receive weekly Covid-19 test."

17. The policy provided that testing "will be done on a rotating basis through Employee Health" and "will be via saliva swab test, and staff will be allowed to work while waiting for results."

18. The policy further provided that "[e]mployees with medical or religious exemptions who are not vaccinated will be required to undergo weekly testing, as will be the case for all other non-vaccinated employees."

19. On August 25, 2021, Crouse Hospital emailed employees that "the New York State Department of Health (DOH) is now mandating that ALL healthcare workers . . . must be fully vaccinated, with first dose received by September 27." The email further explained that "[t]here will be limited religious and medical exemptions. If you feel you are eligible, complete the appropriate form . . . and submit as soon as possible."

20. On August 26, 2021, Mace submitted a request for a religious exemption to the COVID-19 vaccination policy, using the prescribed forms and following the prescribed procedures.

21. Mace is a baptized Christian who subscribes to a Christian worldview based on the words and teachings of Jesus Christ in the Bible and Essene Gospel.

22. In her letter requesting a religious exemption, Mace stated that "[r]eceiving the Covid-19 vaccine would betray my sincerely held personal religious

4

beliefs. I am requesting an accommodation of these beliefs in regards to NY state recently mandating the vaccine for healthcare workers."

23. Mace further explained: "I believe in and follow the principles God has laid out in His word. My deeply held beliefs are that vaccines, and in particular, the Covid-19 vaccine, without getting into the science of it, and to put it simply, overrides and rewrites the perfect system that God has created. We were created in God's image (Genesis 1:27). My body is a temple for the Holy Spirit, and as such am only held accountable by God and to God. I must honor Him by living in obedience to Him. This means to me trusting in His plan and knowing that He has given me everything I need to stay healthy including my God given immune system and not tainting it with chemicals and evil impurities. 'Know ye not that your body is the temple of the Holy Ghost which is in you, which ye have of God, and ye are not your own? For ye are bought with a price therefore glorify God in your body, and in your spirit, which are God's.'"

24. On August 27, 2021, Crouse Hospital emailed employees that the New York State Department of Health "issued an update" to its COVID-19 vaccination rule that "removes the religious exemption option from the original mandate. The medical exemption option remains in place." This refers to the COVID-19 emergency regulation issued by the New York State Department of Health on August 26, 2021 ("DOH Mandate").

25. The August 27 email explained that, under the DOH Mandate, employees must be fully vaccinated with a first dose by September 27, 2021.

26. On September 14, 2021, the DOH Mandate was temporarily stayed by the U.S. District Court for the Northern District of New York, *see Dr. A. v. Hochul*, 21-CV-1009(DNH), 2021 WL 4189533, at *1 (N.D.N.Y. Sept. 14, 2021), which TRO

5

was converted to a preliminary injunction on October 12, 2021, *see Dr. A. v. Hochul*, 567 F. Supp.3d 362 (N.D.N.Y. 2021).

27.     On September 23, 2021, Mace was notified by John Bergemann, Director of Human Resources, that her religious exemption "has been reviewed and it is conditionally approved."

28.     In his September 23 email, Bergemann explained: "Please know that religious exemptions are being processed and approved at this time under temporary order of a New York federal court, allowing religious exemptions.  That temporary order is being challenged by the state of New York.  Depending on the outcome of the court proceeding, religious exemptions may not be allowed under the State Public Health Law emergency regulations and if so, this exemption may be revoked at a future time.  Therefore this approval is temporary until the final decision is rendered in the court proceeding.  Crouse must follow whatever guidelines are established at that time."

29.     In approving Mace's religious exemption, Crouse Hospital did not change or restrict Mace's regular job duties in any manner.

30.     Notably, the only condition imposed on Mace in connection with her approved religious exemption was that she undergo weekly COVID-19 testing, which Mace complied with and which was always negative.

31.     In approving Mace's religious exemption, Crouse Hospital did not engage in the interactive process with Mace.

32.     In approving Mace's religious exemption, Crouse Hospital did not question the sincerity of Mace's religious objections to the COVID-19 vaccine.

33.     In approving Mace's religious exemption, Crouse Hospital did not assert that it would cause any undue hardship on the hospital.

34. In approving Mace's religious exemption, Crouse Hospital did not assert that the cost of weekly COVID-19 testing was more than a "de minimis" expense or administrative burden on the hospital.

35. In approving Mace's religious exemption, Crouse Hospital did not assert that allowing her to work while unvaccinated would pose any danger to the health or safety of patients and staff.

36. Beginning in or around March 2020, the COVID-19 precautions required by Crouse Hospital included temperature checks for all persons entering the hospital, appropriate mask wearing in the hospital, and social distancing where feasible. These precautions were deemed adequate to mitigate the risk of spreading or catching COVID-19.

37. At all times, Mace followed all required COVID-19 precautions.

*Mace's Termination*

38. The preliminary injunction staying the DOH mandate was vacated on appeal on November 4, 2021, s*ee We the Patriots USA, Inc. v. Hochul*, 17 F.4th 266 (2d Cir. 2021) (per curiam); *see also We the Patriots USA, Inc. v. Hochul*, 17 F.4th 368 (2d Cir. 2021) (per curiam) ("clarifying" opinion issued November 12, 2021).

39. On November 16, 2021, John Bergemann emailed employees with religious exemptions that "[p]er a New York State Department of Health notice released November 15, 2021, the COVID vaccine mandate implementation date is Monday, November 22. . . . This eliminates previously granted religious exemptions, which will no longer be allowed per NYS DOH beginning Monday, November 22." Bergemann further stated: "As a result of this DOH mandate, you must receive your first COVID vaccination by Monday, November 22 or you will be deemed a voluntary resignation from your position."

7

40. Notably, Crouse Hospital revoked Mace's religious exemption solely on the grounds that it "will no longer be allowed" by the New York State Department of Health.

41. In revoking Mace's religious exemption, Crouse Hospital did not dispute Mace's good faith religious objections to the COVID-19 vaccine, nor did it assert that continuing the exemption would cause an undue hardship on the hospital, nor did it assert that continuing the exemption would pose any danger to the health or safety of patients and staff.

42. Defendant maintained this same position before the EEOC, where it argued that Mace "was not entitled to a religious exemption under the Emergency Regulations [DOH mandate] and she therefore was separated. Responsibility for this decision rests with New York State, not with the Hospital."

43. When Mace continued to abide by her good faith religious objections to the COVID-19 vaccination policy, she was terminated on November 22, 2021, for "not meeting the state mandate of receiving a COVID 19 vaccine."

*DOH Mandate Does Not Preclude Religious Exemptions*

44. Crouse Hospital's understanding and implementation of the DOH Mandate was legally erroneous and violated Mace's federal and state law rights.

45. It does not violate the DOH Mandate for a covered entity to grant a covered employee a religious exemption to the COVID-19 vaccination requirement in accordance with federal and state equal employment opportunity laws.

46. The DOH Mandate does not prohibit religious exemptions; rather, it is silent on the issue of religious exemptions.

47. Although the DOH Mandate expressly provides for medical exemptions, nowhere does it state (in sum or substance) that "only" medical exemptions are allowed.

48. The DOH Mandate does not purport to preempt the rights and protections afforded employees under federal and state equal employment opportunity laws.

49. On the contrary, in the "Regulatory Impact Statement" accompanying the emergency regulation, the DOH expressly noted that "[t]his regulation will not conflict with any state or federal rules."

50. On November 15, 2021, the Department of Health issued a "Dear Administrator Letter" that stated the DOH's position on this issue.

51. Upon information and belief, this is the notice referred to by John Bergemann in his November 16 email, discussed above.

52. The Letter still is posted on the Department of Health's website and has not been retracted or rescinded.

53. The Letter is addressed to "Chief Executive Officers, Nursing Home Operators and Administrators, Adult Care Facility Administrators, and Home Care and Hospice Administrators."

54. The Letter begins by reiterating the COVID-19 vaccination requirement and stating that, beginning November 22, 2021, it applies to covered employees who were previously granted religious exemptions. But then the Letter directs: "Facilities should have a process in place to consider reasonable accommodation requests from covered personnel based on sincerely held religious beliefs consistent with applicable Federal and State laws, including Equal

Employment Opportunity (EEO) laws such as Title VII of the Civil Rights Act and the NYS Human Rights Law, and their applicable guidance."

55. The Letter makes clear that the Department of Health does not consider the COVID-19 vaccination mandate to be inconsistent with federal and state EEO laws that require reasonable accommodations for employees' sincerely held religious beliefs. Furthermore, the Letter provides no limitations or restrictions on how covered entities may comply with their obligations under federal and state EEO laws.

56. The EEOC has published extensive guidance relating to COVID-19 (which the "Dear Administrator Letter" instructed healthcare facilities to consider). In "What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws," (updated July 12, 2022) (available at www.eeoc.gov), the EEOC has explained:

> An employee who does not get vaccinated due to a disability (covered by the ADA) or a sincerely held religious belief, practice, or observance (covered by Title VII) may be entitled to a reasonable accommodation that does not pose an undue hardship on the operation of the employer's business. For example, as a reasonable accommodation, an unvaccinated employee entering the workplace might wear a face mask, work at a social distance from coworkers or non-employees, work a modified shift, get periodic tests for COVID-19, be given the opportunity to telework, or finally, accept a reassignment.

*Id.* § K.2 (Vaccinations – Overview). These are precisely the reasonable accommodations at issue here – masking, testing, and social distancing – that Mace could have followed in lieu of the COVID-19 vaccine.

57. Upon information and belief, the New York Department of Health never has issued any guidance or directives to covered entities that they may not grant religious exemptions in accordance with federal and state EEO laws.

58. Upon information and belief, the New York Department of Health never has issued any guidance or directives to covered entities that employees who have been granted religious exemptions in accordance with federal and state EEO laws may not work onsite or engage in direct patient care activities.

59. Upon information and belief, since August 26, 2021, and continuing to the present, unvaccinated health care workers with pending or approved religious exemptions have been working onsite and/or engaging in direct patient care activities in health care facilities throughout New York.

60. Upon information and belief, since August 26, 2021, and continuing to the present, the New York Department of Health never has penalized a covered entity for allowing unvaccinated health care workers with pending or approved religious exemptions to work onsite and/or engage in direct patient care activities.

*No Undue Risk to Patients and Staff*

61. When Crouse Hospital initially approved Mace's religious exemption, this meant that it had determined that allowing Mace to work unvaccinated, while following the standard COVID-19 precautions and being tested weekly, would not pose an undue risk to patients and staff of catching COVID-19.

62. It would not have caused an undue risk to patients and staff of catching COVID-19 to allow Mace to continue following the standard COVID-19 precautions and being tested weekly, instead of revoking her exemption.

63. Nothing changed about the dangers of COVID-19 in the Fall 2021 to render these precautions ineffective. On the contrary, rates of hospitalizations and deaths under the "Delta" variant were declining by October 2021, and the "Omicron" variant, which became dominant in December 2021, is widely acknowledged to be less virulent than previous waves have been.

64. Significantly, it was well-established by the Fall 2021 that the available COVID-19 vaccines do not prevent the transmission of the virus.

65. On August 5, 2021, during a televised interview with CNN's Wolf Blitzer, CDC Director Dr. Rochelle Walensky stated that the COVID-19 vaccines "continue to work well for Delta, with regard to severe illness and death – they prevent it. But what they can't do anymore is prevent transmission."

66. Indeed, a senior Pfizer executive recently admitted during a parliamentary hearing that the company did not know whether or not its COVID-19 vaccine prevented transmission of the virus when the vaccine was first rolled out.

67. Notably, the DOH Mandate contains an express medical exemption provision, pursuant to which "any reasonable accommodation may be granted . . . ." 10 N.Y.C.R.R. § 2.61(d)(1).

68. Significantly, the DOH Mandate imposes no workplace limitations on employees who receive medical exemptions.

69. According to the New York Department of Health, therefore, an unvaccinated employee who is granted a *medical* exemption does *not* pose an unacceptable risk of spreading COVID-19 to other employees or patients.

70. It would be pure speculation, indeed irrational, for Crouse Hospital to argue that an unvaccinated employee who is granted a *religious* exemption *does* pose an unacceptable risk of spreading COVID-19 to other employees or patients.

71. Indeed, it is possible that unvaccinated employees who are regularly tested for COVID-19 will be more likely to know they are infected and potentially contagious, and therefore can self-quarantine and consequently will be less likely to transmit the virus unknowingly, than vaccinated employees who do not undergo regular testing.

72. In short, there is no objective, scientific basis for Crouse Hospital to argue that continuing Mace's religious exemption would have posed an undue risk to patients and staff of becoming sick from COVID-19. This would be pure speculation.

73. Since her termination by Crouse Hospital, Mace has diligently pursued alternative employment.

74. From December 13, 2021, to October 13, 2022, Mace worked as a certified surgical technologist at a hospital in Scranton, Pennsylvania. The hospital granted her religious exemption to its COVID-19 vaccination policy.

75. This entire experience has caused Mace significant mental and emotional distress and personal and financial hardship.

## COUNT ONE:  VIOLATION OF TITLE VII

76. By revoking her religious exemption to the mandatory COVID-19 vaccination policy and terminating her employment, Defendant violated Mace's rights under Title VII.

77. Title VII provides, *inter alia*, that "[i]t shall be an unlawful employment practice for an employer . . . to discharge any individual . . . because of such individual's . . . religion . . . ." 42 U.S.C. § 2000e-2(a)(1). Title VII further defines "religion" to include "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business."

78. Accordingly, under Title VII it is unlawful "for an employer not to make reasonable accommodations, short of undue hardship, for the religious practices of her employees . . . ." *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63,

74 (1977); *see also Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 68 (1986) ("The employer violates the statute unless it 'demonstrates that [it] is unable to reasonable accommodate . . . an employee's . . . religious observance or practice without undue hardship on the conduct of the employer's business.'") (quoting 42 U.S.C. § 2000e(j)).

79. Defendant was recklessly indifferent to Mace's federally protected rights.

80. As a direct and proximate result of Defendant's discriminatory conduct, Mace has suffered pecuniary and non-pecuniary damages, including lost income and benefits and mental and emotional distress, for which she is entitled to an award of reinstatement, back pay, front pay, out of pocket costs, compensatory damages, punitive damages, and attorney's fees and costs.

**COUNT TWO:  VIOLATION OF STATE HUMAN RIGHTS LAW**

81. By revoking her religious exemption to the mandatory COVID-19 vaccination policy and terminating her employment, Defendant violated Mace's rights under the New York State Human Rights Law.

82. The State Human Rights Law provides, *inter alia*, that "[i]t shall be an unlawful discriminatory practice . . . [f]or an employer . . . because of an individual's . . . creed . . . to discharge from employment such individual . . . ." N.Y. Exec. Law § 296(1)(a).  The State Human Rights Law further provides that "[i]t shall be an unlawful discriminatory practice for any employer . . . to impose upon a person as a condition of obtaining or retaining employment . . . any terms or conditions that would require such person to violate or forego a sincerely held practice of her or her religion . . . unless, after engaging in a bona fide effort, the employer demonstrates that it is unable to reasonably accommodate the employee's or prospective

employee's sincerely held religious observance or practice without undue hardship on the conduct of the employer's business." *Id.* § 296(10)(a).

83. Defendant was recklessly indifferent to Mace's state law rights.

84. As a direct and proximate result of Defendant's discriminatory conduct, Mace has suffered pecuniary and non-pecuniary damages, including lost income and benefits and mental and emotional distress, for which she is entitled to an award of reinstatement, back pay, front pay, out of pocket costs, compensatory damages, punitive damages, and attorney's fees and costs.

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury as to all issues triable by jury in the above-captioned civil action.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays that the Court enter judgment against Defendant on her claims under Title VII and the New York State Human Rights Law, and award her the following relief:

A. Reinstatement to the same or equivalent position;

B. Back pay in an amount to be determined at trial;

C. Front pay in an amount to be determined at trial;

D. Out of pocket costs in an amount to be determined at trial;

E. Compensatory damages in an amount to be determined at trial;

F. Punitive damages in an amount to be determined at trial;

G. Pre-judgment and post-judgment interest;

    H.      Attorney's fees and costs;

    I.       Appropriate injunctive relief; and

    J.      Such other relief as justice may require.

Dated:  November 4, 2022

                      Respectfully submitted,

*Steven M. Warshawsky*

By: _____
STEVEN M. WARSHAWSKY
The Warshawsky Law Firm
118 South Bedford Road, Suite 100
Mount Kisco, New York  10549
Tel:  (914) 864-3353
Email:  smw@warshawskylawfirm.com
Web:  www.warshawskylawfirm.com

*Attorney for Karen Mace*