**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**KAREN MACE,**

                     **Plaintiff,**

      **v.**                                     **No. 5:22-cv-1153**
                                                 **(TJM/ATB)**

**CROUSE HEALTH HOSPITAL, INC.,**

                     **Defendants.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**

### DECISION & ORDER

Before the Court is Defendant Crouse Health Hospital, Inc.'s motion to dismiss Plaintiff's Complaint.  See dkt. # 8.  The parties have briefed the issues, and the Court will decide the matter without oral argument.

**I.   Background**

Plaintiff Karen Mace alleges that Defendant Crouse Health Hospital, Inc. ("Crouse"), discriminated against her on the basis of her religion when Defendant fired her for refusing to vaccinate against COVID-19.  Plaintiff's religious beliefs prevent her from becoming vaccinated.  Plaintiff brings claims pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., and the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 et seq.

At the times relevant to this action, Plaintiff was a Crouse employee.  Complaint

1

("Complt"), dkt. # 1, at ¶ 2.  Crouse, Plaintiff's employer, had more than 500 employees at the relevant time.  Id. at ¶ 3.  Plaintiff was hired by Crouse Hospital on July 21, 2008.  Id. at ¶ 12.  She worked as a Certified Surgical Technician, "a health care professional who provides surgeons and patients with support before, during, and after surgery."  Id. at ¶ 13.  Plaintiff's duties in the operating room included preparing the room for surgery by sterilizing and setting up instruments, "disinfecting surgical sites and preparing patients for surgery," giving surgeons instruments during procedures, "dressing surgical incisions," and making sure the surgical environment was "sterile."  Id. at ¶ 14.  Plaintiff was qualified for the job and performed in a satisfactory way.  Id. at ¶ 15.

Plaintiff alleges that on August 12, 2021, Crouse announced that all employees must be vaccinated by September 13, 2021 or face weekly COVID-19 tests.  Id. at ¶ 16.  The tests would be done "on a rotating basis" and performed using a "saliva swab test."  Id.  Employees could work will awaiting results.  Id. at ¶ 17.  The policy also mandated that employees with medical or religious exemptions undergo weekly testing as would other unvaccinated employees.  Id. at ¶ 18.

Crouse emailed employees on August 25, 2021 that "'the New York State Department of Health (DOH) is now mandating that ALL healthcare workers . . . must be fully vaccinated, with first dose received by September 27.'"  Id. at ¶ 19.  The notice informed employees that medical and religious exemptions to the policy would exist.  Id.  Crouse urged employees who felt they were entitled to such exemptions to submit "the appropriate form" as quickly as possible.  Id.  Plaintiff submitted a request for a religious exemption.  Id. at ¶ 20.  That request used "the prescribed forms and follow[ed] the prescribed procedures."  Id.  Plaintiff explained that her religious beliefs did not permit her to

2

receive the vaccine.  Id. at ¶¶ 21-23.

Crouse emailed employees on August 27, 2021 that the New York State Department of Health had "'issued an update' to its Covid-19 vaccination rule."  Id. at ¶ 24.  That update removed the religious exemption from the original vaccine mandate but maintained the medical exemption.  Id.  The email referred to an emergency regulation issued by the Department of Health on August 26, 2021.  Id.  That mandate required that employees be fully vaccinated and have had their first dose by September 27, 2021.  Id. at ¶ 25.  A court in the Northern District of New York temporarily stayed the mandate on September 14. 2021.  Id. at ¶ 26.  The court issued a preliminary injunction on October 12, 2021.  Id.

Plaintiff received notice on September 23, 2021 from Crouse's director of Human Resources, John Bergemann, that her religious exemption had been "'conditionally approved.'" Id. at ¶ 27.  Bergemann's correspondence explained that the approval came under a temporary order from the District Court.  Id. at ¶ 28.  Bergemann further explained that the order had been appealed by the State of New York.  Id.  The letter warned that "[d]epending on the outcome of the court proceedings, religious exemptions may not be allowed under the State Public Health Law emergency regulations[.]" Id.  If such exemptions are no longer allowed, Bergemann warned, Plaintiff's "exemption may be revoked at a future time."  Id.  As such, Plaintiff's "approval is temporary until the final decision is rendered in the court proceedings.  Crouse must follow whatever guidelines are established at that time."  Id.

Crouse did not alter Plaintiff's regular job duties in any way when approving her religious exemption.  Id. at ¶ 29.  The approval required that Plaintiff "undergo weekly COVID-19 testing[.]" Id. at ¶ 30.  Plaintiff complied with that requirement, and tested

3

negative every time.  Id.  Crouse did not question the sincerity of her religious objections to the vaccine, nor did Crouse claim that the exemption provided Plaintiff would cause Defendant any undue hardship.  Id. at ¶¶ 32-33.  Defendant did not assert that the cost of providing weekly COVID-19 testing would be more than a "'de minimus'" expense of the hospital.  Id. at ¶ 34.  Crouse did not assert that Plaintiff's unvaccinated status "would pose any danger to the health and safety of patients or staff."  Id. at ¶ 35.  Defendant had implemented measures to prevent the spread of COVID-19 on March 20, 2020, including temperature checks for those entering the facility, masking, and "social distancing where feasible."  Id. at ¶ 36.  Plaintiff alleges that "[t]hese precautions were deemed adequate to mitigate the risk of spreading or catching COVID-19."  Id.  Plaintiff observed these "precautions" "[a]t all times."  Id. at ¶ 37.

The Second Circuit Court of Appeals vacated the preliminary injunction preventing enforcement of the vaccine mandate for workers like Plaintiff on November 4, 2021, and clarified that ruling on November 12, 2021.  Id. at ¶ 38.  On November 16, 2021, John Bergemann emailed Crouse employees who had religious exemptions to inform them that on November 15, 2021, the New York State Department of Health had issued notice that "'the COVID vaccine mandate implementation date is Monday, November 22," and that religious exemptions previously granted had been "eliminate[d][.]"  Id. at ¶ 39.  Such exemptions, Bergemann stated, "'will no longer be allowed per NYS DOH beginning Monday, November 22.'"  Id.  Thus, Bergemann explained, "[a]s a result of this DOH mandate, you must receive your first COVID vaccination by Monday, November 22 or you will be deemed a voluntary resignation from your position."  Id.

4

Plaintiff alleges that the only reason that Crouse revoked her religious exemption to the vaccine mandate was that "it 'will no longer be allowed' by the New York State Department of Health." Id. at ¶ 40.  Crouse did not dispute Plaintiff's good-faith religious objection to the COVID-19 vaccine, and did not assert that allowing her to be exempt from the vaccine requirement would cause Crouse an undue hardship.  Id. at ¶ 41.  Plaintiff also alleges that Crouse did not state "that continuing the exemption would pose any danger to the health or safety of patients and staff."  Id.  Plaintiff further contends that Defendant did not allege any undue hardship or patient danger from Plaintiff's unvaccinated status before the Equal Employment Opportunity Commission ("EEOC"), instead explaining that Plaintiff "was not entitled to religious exemption under the Emergency Regulations [DOH Mandate] and she therefore was separated.  Responsibility for this decision rests with New York State, not with the Hospital."  Id. at ¶ 42.

Defendant terminated Plaintiff's employment on November 22, 2021.  Id. at ¶ 43. Plaintiff had "continued to abide by her good faith religious objections to the COVID-19 vaccination policy."  Id.  Defendant alleges that her termination came from "'not meeting the state mandate of receiving a COVID-19 vaccine.'"  Id.  Plaintiff alleges that Defendant's "understanding and implementation of the DOH Mandate was legally erroneous and violated Mace's federal and state law rights."  Id. at ¶ 44.  Plaintiff offers an interpretation of the regulations that would permit an entity to grant a religious exemption to the vaccine mandate.  Id. at ¶¶ 45-60.  Plaintiff also asserts that permitting her to work without vaccination would not have posed an undue risk to patients or staff.  Id. at ¶¶ 61-75.

Plaintiff's Complaint contains two counts.  Count One alleges that Defendant's revocation of Plaintiff's religious exemption and termination of her employment amounted to

discrimination on the basis of Plaintiff's religion.  Such conduct, Plaintiff claims, violated Title VII.  Count Two alleges that Defendant's conduct also violated the New York State Human Rights Law.

After being served with the Complaint, the Defendant filed the instant motion to dismiss.  The parties briefed the issues and supplemented their briefing in light of more recent court decisions.

## II.   LEGAL STANDARD

Defendant seeks dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6). A defendant moving for dismissal pursuant to Rule 12(b)(6) argues that the plaintiff has not stated a claim upon which relief could be granted, even if all factual allegations in the complaint were proved true.  In addressing such motions, the Court must accept "all factual allegations in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor."  Holmes v. Grubman, 568 F.3d 329, 335 (2d Cir. 2009).  This tenet does not apply to legal conclusions.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. at 678.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Id. (quoting Bell Atl. v. Twombly, 550 U.S. 544, 570 (2007)).

## III.   Analysis

As a general matter, Defendant argues that the Court should dismiss the Complaint because, at the relevant time, New York law required that hospital employees like Plaintiff be vaccinated against COVID-19.  No exemption for people who objected to the vaccines

on religious grounds existed in New York.  At the time she filed her suit, other workers had challenged the lack of a religious exemption to the vaccine and lost at the trial and appellate level.  Courts had agreed that allowing a religious objector to work without being vaccinated amounted to an undue burden for an employer and could not be a violation of Title VII or the NYSHRL.  Defendant's motion argues that Plaintiff's Complaint is an attempt to relitigate this settled law, and should be dismissed.

Plaintiff disagrees.  She also argues that subsequent decisions by state courts have revived the issue of whether New York law prevents an employer covered by the regulation in question from accommodating an employee's religious beliefs regarding vaccination.

The Court will first explain New York's vaccine regulations.  The Court will then address Defendant's claims regarding the regulation in question, and finally turn to the more recent court decisions.

### A.    Vaccine Mandate

New York regulations require that "[c]overed entities shall continuously require personnel to be fully vaccinated against COVID-19, absent receipt of an exemption as allowed below."  10 NYCRR § 2.61(c).  A "covered entity" includes "(i) any facility or institution included in the definition of hospital in section 2801 of the Public Health Law, including but not limited to general hospitals, nursing homes, and diagnostic and treatment centers[.]" Id. at § 2.61(a)(1)(i).  The regulation defines "[p]ersonnel, for the purposes of this section," to "mean all persons employed or affiliated with a covered entity, whether paid or unpaid, including but not limited to employees, members of the medical and nursing staff, contract staff, students, and volunteers, who engage in activities such that if they were infected with COVID-19, they could potentially expose other covered personnel, patients or

7

residents to the disease."  Id. at § 2.61(a)(2).  The regulation requires "[c]overed entities" to "continuously require personnel to be fully vaccinated against COVID-19, absent receipt of an exemption as allowed below."  Id. at § 2.61(c).

The regulation provides for a "medical exemption."  See 10 NYCRR § 2.61(d)(1). Under that regulation, "[i]f any licensed physician, physician assistant, or certified nurse practitioner certifies that immunization with a COVID-19 vaccine is detrimental to the health of a member of a covered entity's personnel, based upon a pre-existing health condition, the requirements of this section relating to COVID-19 immunization shall be inapplicable only until such immunization is found no longer to be detrimental to such personnel member's health."  Id.  The regulation further requires that the employee's personnel record contain "[t]he nature and duration of the medical exemption."  Id.  Any exemption must meet "generally accepted medical standards . . . and any reasonable accommodation may be granted and likewise be documented in such record."  Id.  The regulation gave "covered entities" that were "general hospitals and nursing homes" until September 27, 2021 to "document medical exemptions in personnel records or other appropriate records[.]" Id. at § 2.61(d)(1)(i).

This mandate became the subject of litigation, and district courts in the Second Circuit came to different conclusions about whether the lack of a religious exemption in the regulation amounted to discrimination under Title VII or the United States Constitution. See, e.g., Dr. A. v. Hochul, 567 F.Supp.3d 362, 373 (N.D.N.Y. 2022) (finding it likely that Plaintiffs would succeed on a Title VII claim for religious discrimination because the regulation fails to provide a religious objection and granting preliminary injunction); We the Patriots USA, Inc. v. Hochul, No. 21-cv-4954, 2021 WL 4048670 (E.D.N.Y. Sept. 21, 2021)

(denying preliminary injunction)).[1]

The Second Circuit Court of Appeals issued two opinions in November, 2021 that addressed the regulation in question, finding that the regulation could be enforced consistent with the Constitution and Title VII's protections against religious discrimination. In We the Patriots USA, Inc. v. Hochul, 17 F.4th 266 (2d Cir. 2021), issued on November 4, 2021, the Court found that "[t]he State issued the Rule in response to rapidly increasing infection rates related to the Delta variant of the SARS-CoV-2 virus, a virus that has caused widespread suffering in the State, country, and world since early 2020." Id. at 272.  That regulation, the court explained, "establishes a medical exemption to the vaccination requirement, but–consistent with New York's prior vaccination requirements for healthcare workers–does not include an exemption based on religious belief." Id.  The Court concluded that plaintiffs were not likely to succeed on their claim that the regulation violated Title VII's provision "mak[ing] it unlawful for employers 'to discharge . . . or otherwise to discriminate against any individual' in his or her employment 'because of such individual's . . . religion.'" Id. at 291 (quoting 42 U.S.C. § 2000e-2(a)(1)).

Title VII prohibits religious discrimination ''unless an employer demonstrates that he is unable to reasonably accommodate . . . an employee's religious observance or practice without undue hardship on . . . the employer's business.'" Id. (quoting 42 U.S.C. § 200e(j)).  Plaintiffs in Dr. A. had argued "that the absence of a religious exemption in Section 2.61

---

[1] Electronic databases do not provide a written opinion from the Eastern District of New York in We the Patriots.  The district court's opinion denying the motion for a preliminary injunction may have been issued from the bench.  In any case, the Court of Appeals addressed both Dr. A. and We the Patriots in later opinions that resolved the conflict between the two district-court opinions.

prohibits them from seeking reasonable accommodations from their employers under Title VII for sincerely held religious beliefs." Id. at 291-92.  The Court rejected this argument because "Section 2.61, on its face, does not bar an employer from providing an employee with a reasonable accommodation that removes the individual from the scope of the Rule." Id. at 292.  Employers are forced by Section 2.61 to violate Title VII's mandate to seek out accommodations for people with sincere religious beliefs "because, although it bars an employer from granting a religious exemption from the vaccination requirement, it does not prevent employees from seeking a religious accommodation allowing them to continue working consistent with the Rule, while avoiding the vaccination requirement." Id.  Further, the Court found, the Rule did not violate Title VII simply because the rule did not provide an accommodation which would allow plaintiffs to work their preferred jobs unvaccinated, since an employer "'need not offer the accommodation the employee prefers.'" Id. (quoting Cosme v. Henderson, 287 F.3d 152, 158 (2d Cir. 2002)).  "Instead, an employer must offer a reasonable accommodation that does not cause the employer an undue hardship.  Once 'any reasonable accommodation is provided, the statutory inquiry ends.'" Id. (quoting Cosme, 287 F.3d at 158).  Thus, since "Section 2.61's text does not foreclose all opportunity for Plaintiffs to secure a reasonable accommodation under Title VII, the Rule does not conflict with federal law." Id.

The Court of Appeals "clarified" its opinion on November 12, 2021.  See 17 F.4th 368.  The Court noted that the district court in Dr. A. had dissolved the preliminary injunction previously in place on the case, noting that the Dr. A. plaintiffs "'no longer need' a preliminary injunction because Section 2.61 'does not prevent employees from seeking a religious accommodation allowing them to continue working consistent with the Rule, while

avoiding the vaccination requirement."  17 F.4th at 370.  The Court found that "[a] reader might erroneously conclude from this text that, consistent with our opinion, employers may grant religious accommodations that allow employees to continue working, unvaccinated, at positions in which they 'engage in activities such that if they were infected with COVID-19, they could potentially expose other covered personnel, patients, or residents to the disease.'"  Id. (quoting 10 NYCRR § 2.61 ("definition of 'personnel'")).  The Court explained that, an accommodation that "*removes the individual from the scope of the Rule*" meant that "it may be possible under the Rule for an employer to *accommodate*–not *exempt*–employees with religious exemptions, by employing them in a manner that removes them from the Rule's definition of 'personnel.'"  Id. (emphasis in original).  "Such an accommodation would have the effect under the Rule of permitting such employees to remain unvaccinated while employed."  Id.  The Court reiterated that "Title VII does not require covered entities to provide the accommodation the Plaintiffs prefer–in this case, a blanket religious exemption allowing them to continue working at their current positions unvaccinated."  Id.  The Court emphasized that "if a medically eligible employee's work assignments mean that she qualifies as 'personnel,' she is covered by the Rule and her employer must 'continuously require' that she is vaccinated against COVID-19."  Id, (quoting 10 NYCRR § 2.61).

### B.    Effect of Section 2.61 and We the Patriots

Plaintiff alleges discrimination on the basis of religion pursuant to Title VII.  Under that statute, "it is 'an unlawful employment practice . . . for an employer not to make reasonable accommodations, short of undue hardship, for the religious practices of his

11

employees and prospective employees.'" <u>Baker v. Home Depot</u>, 445 F.3d 541, 546 (2d Cir.

2006) (quoting <u>Trans World Airlines, Inc. v. Hardison</u>, 432 U.S. 63, 74 (1977)).  Plaintiffs

asserting such a claim must make out a *prima facie* case that: "'(1) they held a bona fide

religious belief conflicting with an employment requirement; (2) they informed their

employers of this belief; and (3) they were disciplined for failure to comply with the

conflicting employment requirement.'" <u>Id.</u> (quoting <u>Knight v. Conn. Dep't of Pub. Health</u>, 275

F.3d 156, 167 (2d Cir. 2001)).  If the plaintiff makes out a *prima facie* case, then "the

employer 'must offer [him or her] a reasonable accommodation, unless doing so would

cause the employer to suffer an undue hardship.'" <u>Id.</u> (quoting <u>Cosme</u>, 287 F.3d at 158).

"An accommodation is said to cause an undue hardship whenever it results in 'more than a

de minimis cost' to the employer." <u>Id.</u> at 548 (quoting <u>Trans World Airlines</u>, 432 U.S. at

84).[2]

Defendant argues that Section 2.61's language, which Defendant contends does not

permit a religious exemption to the vaccine requirement for a covered employee, makes

providing such an exemption an undue hardship for Crouse.  Defendant insists that the lack

of exemption forecloses any Title VII or NYSHRL claim of discrimination on the basis of

religion.  Defendant further contends that the <u>We the Patriots</u> decisions described above

firmly establish that rule.  Defendant points to other cases from district courts in this Circuit

---

[2]"'We typically treat Title VII and NYHRL claims as analytically identical, applying the same standard of proof to both claims.'" <u>Lenzi v. Systemax, Inc.</u>, 944 F.3d 97, 107 n.7 (2d Cir. 2019) (quoting <u>Salaman v. Our Lady of Victory Hosp.</u>, 514 F.3d 217, 225 n.9 (2d Cir. 2008)).  The Court notes below that Plaintiff offers a distinction between the standards under both laws.  As the Court explains, even a more restrictive approach under the NYSHRL would not rescue Plaintiff's claims.

that have reached the same conclusion.  The cases that Defendant cites point out that "*We the Patriots* expressly rejected the notion that Title VII entitles employees to a blanket religious exemption to the Mandate that would allow them to continue in their positions unvaccinated.  This is exactly the type of accommodation Plaintiff requested–permission to remain in her position without being vaccinated . . . The only accommodation Plaintiff requested was found to be unreasonable as an undue hardship in *We the Patriots*[.]" Defendant's Brief, dkt. # 8-3, at 9 (quoting Marte v. Montefiore Medical Center, No. 22-cv-3491, 2022 WL 759182, at *4 (S.D.N.Y. October 12, 2022); see also Does 1-2 v. Hochul, No. 21-cv-5067, 2022 WL 4637843, *15 (E.D.N.Y. Sept. 30, 2022) (finding that "[t]he sole 'accommodation' the plaintiffs seek–a religious exemption from the vaccine requirement–would impose an undue hardship on [the defendants] because it would require them to violate state law.")).

In response, Plaintiff describes her claim as one that does not attempt to challenge the vaccine requirement stated in Section 2.61.  Instead, she contends that Defendant failed reasonably to accommodate her sincerely held religious belief that she could not be vaccinated and wrongly revoked a religious exemption previously provided her.  She claims that she "is asserting her individual right to a reasonable accommodation to the policy, which is guaranteed by federal and state law."  Plaintiff would like to "be exempted from the COVID-19 vaccination requirement . . . and to be allowed to continue her regular employment while following" the testing, masking, and other safety protocols used before New York removed the possibility of a religious exemption for covered employees.  She contends that "this issue has not been the subject of any controlling case law."

Plaintiff agrees that requiring an employer to violate state law to provide an

exemption would represent an undue hardship, but argues that "*this is an erroneous

understanding of the DOH rule and that religious exemptions to the mandate remain

available under federal and state law*."  Plaintiff's Response in Opposition, dkt. # 12, at 8

(emphasis in original).  She argues that this is the only issue before the Court.   She asserts

that Section 2.61 neither provides for a religious exemption nor expressly prohibits one.  No

language in that regulation, she claims, claims to override rights and protections available to

employees under Title VII.  "On the contrary," Plaintiff claims, "federal and state anti-

discrimination laws remain fully applicable under" Section 2.61.  Id. at 9.  She points to a

November 15, 2021 letter from the New York State Department of Health that told

administrators that "[f]acilities should have a process in place to consider reasonable

accommodation requests from covered personnel based on sincerely held religious beliefs

consistent with applicable Federal and State laws, including . . Title VII[.]"  Id.  Plaintiff

contends that this letter indicates that the Department of Health considered that reasonable

accommodations could be available under Section 2.61 that would permit her to continue

working in her position.  Moreover, Plaintiff alleges, DOH has not sanctioned health-care

facilities who employ unvaccinated workers who have religious exemptions "to work onsite

and/or engage in direct patient care activities."  Id. at 11.  She asserts that "actual practice"

demonstrates that allowing Plaintiff to work unvaccinated with a religious accommodation

would not violate New York law.  Plaintiff also argues that We the Patriots addressed

preemption in its Title VII holding, and not whether a religious accommodation claim could

exist under Title VII.  The language in the opinion which seemed to foreclose a religious

14

exemption, Plaintiff contends, was simply dictum.

Defendant responds by pointing out that the second We the Patriots decision expressly found that hospitals may not grant "religious accommodations to allow employees to continue working, unvaccinated, at positions in which they 'engage in activities such that if they were infected with COVID-19, they could potentially expose other covered personnel, patients, or residents to the disease.'" Defendant's Reply Brief, dkt. # 13, at 2. Defendant points out that the Court of Appeals issued its second decision in We the Patriots to clarify that religious accommodations that avoided vaccination could not be granted to covered employees under the regulation in question. Defendant further argues that the letter cited by the Plaintiff in no way suggests that an employee could receive a religious exemption that would permit a covered employee to continue working in such a position. Consistent with the opinion of the Second Circuit, Defendant claims, the letter cited by the Plaintiff merely indicates that accommodations could be made to an employee with a religious objection to vaccination that would permit that employee to continue working in a position that was not covered by the vaccine requirement. Moreover, the letter that Plaintiff cites refers the reader to other information from the Department of Health that reinforces the idea that covered employees–like the Plaintiff–must be vaccinated, even if they seek a religious accommodation.

Since the initial decisions cited by the Defendant, numerous courts in this Circuit have also concluded that a plaintiff who seeks a religious accommodation that entitles them to work in direct patient care without vaccination seeks an accommodation that represents an undue burden to the employer. See, e.g., D'Cunha v. Northwell Health Sys., No.

1:22cv0988, 2023 U.S. Dist. LEXIS 33343, at *7 (S.D.N.Y. Feb. 28, 2023) (any claim that a covered employee is entitled to a religious exemption is foreclosed as an undue burden by We the Patriots); Cagle v. Weill Cornell Med., No. 22cv6951, 2023 U.S. Dist. LEXIS 113687, at *11-12 (S.D.N.Y. June 30, 2023) (dismissing Title VII claim based on religious discrimination because providing a religious exemption to a covered employee violates state law and represents an undue burden); Dennison v. Bon Secours Charity Health Sys. Med. Grp., P.C., No. 22cv2929, 2023 U.S. Dist. LEXIS 84888 at *15 (S.D.N.Y. May 15, 2023) ("By granting Plaintiffs' request–to exempt them from the vaccination requirement and allow them to continue their positions as patient-facing nurses–Defendants would be violating the State Mandate, thus suffering an undue hardship."); Shahid-Ikhlas v. New York, No. 22-cv-10643, 2023 U.S. Dist. LEXIS 79099, at *14-15 (S.D.N.Y. May 5, 2023) (dismissing Title VII claim because an accommodation for the nurse-plaintiff's religious beliefs would be an undue burden; even accommodating her to remove her from her position as a covered employee would be a burden for the employer); Corrales v .Montefiore Med. Ctr., No. 22-CV-3219, 2023 U.S. Dist. LEXIS 55620, at *18 (S.D.N.Y. Mar. 30, 2023) (Defendant "could not have granted [Plaintiff's] requested exemption without undue hardship because granting the exemption would have required [Defendant] to violate binding law.").

The Court agrees with these and other courts which have concluded that requiring that an employer provide an accommodation to an employee whose work involves "activities such that if they were infected with COVID-19, they could potentially expose other covered personnel, patients or residents to the disease" represents an undue burden to the employer.  10 NYCRR § 2.61(a)(2).  The Court finds that providing the accommodation that

Plaintiff seeks–permission to work unvaccinated in settings where unvaccinated persons who do not have a medical exemption are not permitted to work by New York law–presents more than a *de minimus* burden on the employer.  Plaintiff cannot make out a Title VII claim under those circumstances.  The Court in this sense applies Title VII to the regulation in question and finds that the regulation does not violate federal anti-discrimination law.  Likewise, the Court is not persuaded by the letter cited by the Plaintiff or that the Second Circuit's opinions in the We the Patriots cases permit a finding that an unvaccinated employee can work in a covered position.  The Court finds the Second Circuit's interpretation of the regulation is clear:  Title VII requires that employees be provided available reasonable accommodations that shift an unvaccinated worker to a position that is not longer covered by the regulation, but does not require that an employee who works in a covered position be permitted an accommodation that allows them to stay in a position that requires vaccination.  Plaintiff cannot state a claim in this respect.

### C.    Supplemental Briefing on Medical Professionals for Informed Consent v. Bassett

While Defendant's motion to dismiss was pending, the Supreme Court of Onondaga County, New York issued an opinion that touched on the matters at issue in this case.  At the Plaintiff's request, the Court permitted the parties to provide supplemental briefing on the issues raised by that opinion.  See dkt. #s 14-18.  The parties also briefed issues related to the NYSHRL.

The case in question, Medical Professionals for Informed Consent v. Bassett, 78 Misc.3d 482 (Onondaga Cty. Sup. Ct. 2023), addressed whether New York law permitted the Department of Health to enforce Section 2.61.  The petitioners in that case sought an

order from the court enjoining enforcement of Section 2.61.  Id. at 483.  The court related

that Section 2.61 "has its origin in the beginning stages of the COVID-19 pandemic." Id. at

284.  At that time, the New York State legislature had "ceded powers" to the governor "on

an emergency basis."  Id.  On June 24, 2021, the governor "rescinded his previous

emergency orders related to the COVID-19 Pandemic[.]" Id.  "Despite the end of the

emergency," the court noted, "on June 22, 2022, the Commissioner adopted the Mandate

as a permanent regulation."  Id.  The Court examined New York law related to vaccination

and concluded that the Department of Health exceeded its power by requiring vaccination

for COVID-19 as stated in Section 2.61: "[r]espondents are clearly prohibited from

mandating any vaccination outside of those specifically authorized by the Legislature." Id.

at 490.  The Court found that "10 NYCRR § 2.61, is beyond the scope of Respondents'

authority and is therefore null, void, and of no effect, and Respondents, their agents,

officers, and employers are prohibited from implementing or enforcing the" regulation.  Id. at

491.

As another district court in this Circuit has explained, "[t]his ruling was appealed and

on February 27, 2023, the Appellate Division, Fourth Department, stayed the enforcement

of the Bassett court's decision during the pendency of the appeal." Algarin v. NYC Heath +

Hosps. Corp., No. 1:22cv8340, 2023 U.S. Dist. LEXIS 108666, at *9-10 (S.D.N.Y. June 23,

2023).  Courts have also reported that the New York State Department of Health on May

24, 2023 stated that the Department is considering repeal of Section 2.61, "and therefore,

'effective immediately, the Department will cease citing providers for failing to comply with'

Section 2.61 while repeal is being considered."  Id. at *10 (citing letter from the Department

18

of Health, May 24, 2023).

The Court in <u>Alagrin</u> addressed Plaintiff's claim here that the <u>Bassett</u> decision and DOH declarations regarding future enforcement of Section 6.01 allow her to state a claim that Defendant violated Title VII and the NYSHRL by firing her for refusing vaccination. That court stated:

> Plaintiff's reliance on *Bassett*, a New York Supreme Court decision that found that DOH exceeded its authority in promulgating Section 2.61, is misplaced. *Bassett*, 185 N.Y.S.3d at 585. First, that decision was not issued until January 13, 2023 and therefore [defendant] was obliged to follow Section 2.61 at the time that employment actions were taken with respect to Plaintiff in 2021. Second, the *Bassett* decision was immediately appealed and enforcement of the lower court *Bassett* decision has been stayed by the Fourth Department pending appeal. Therefore, the *Bassett* decision currently does not render Section 2.61 unenforceable. Third, the May 24, 2023 letter from the DOH stating that, effectively immediately, the DOH will not enforce Section 2.61 prospectively while repeal is being contemplated does not change the fact that Section 2.61 was in force and effect in 2021 at the time of the employment actions with respect to Plaintiff. Indeed, the DOH expressly states that its decision to refrain from further enforcement of the rule does not impact the DOH's treatment of "previously cited violations."

<u>Algarin</u>, 2023 U.S. Dist. LEXIS 108666 at *26.

The facts in this case are largely the same. Plaintiff received a religious exemption before the Department of Health promulgated the version of Section 2.61 at issue here. After that version appeared, the Defendant concluded that the law no longer permitted religious exemptions and revoked Plaintiff's exemption. <u>Bassett</u> came long after these decisions and has no bearing on whether Defendant violated Plaintiff's rights by following the law as it then existed. The Court rejects Plaintiff's arguments here for the same reasons as the <u>Algarin</u> court.

Plaintiff also argues in her supplemental briefing that the NYSHRL's protections against religious discrimination uses a definition of "undue hardship" stricter than the

definition used in Title VII.  She argues that, by alleging that Defendant had granted her a religious exemption before the Section 2.61 appeared, she has plausibly alleged that the burden on Defendant from accommodating Plaintiff's religious objections to vaccination was not significant.  Defendant had, after all, established procedures to protect patients and other workers and permitted Plaintiff to work without vaccination.

The problem with Plaintiff's argument here is that it ignores the facts that she has alleged in her Complaint.  Plaintiff alleges that she received an exemption for her religious beliefs before the State of New York established regulations that did not permit such an exemption.  Whether the Defendant had been able to find mitigation measures protect patients and coworkers from any dangers that Plaintiff's unvaccinated status might pose, the situation for the Defendant–and the burden Defendant faced to accommodate Plaintiff's religious belief–changed after the State of New York set out new rules on vaccination for employees like Plaintiff.  Plaintiff's Complaint acknowledges that the mandate that Plaintiff get vaccinated despite her religious objections came after the State set out new rules. Those new rules altered the burden that Defendant faced from accommodating Plaintiff's religious objections.  Being exposed to legal consequences for violating New York regulations represents a serious burden.  Plaintiff has not cited to any cases to the contrary. The Court is not persuaded by this argument.

Plaintiff also largely repeats an argument made in her initial briefing that Section 2.61 was not enforceable because the Department of Health did not have the authority to "override the Human Rights Law and eliminate religious exemptions otherwise required by the statute."  Preventing employees from seeking religious exemptions to regulations like

Section 2.61 exceeded the authority of the Department of Health "and it was unreasonable for Defendant to believe that the agency had such power."  Plaintiff argues that "Defendant violated [Plaintiff's] rights under the Human Rights Law by denying her religious exemption–which they had previously granted–for no reason other than the Department of Health's say-so.  Defendant was not free to disregard its independent statutory obligations under the Human Rights Law with respect to reasonable religious–not just medical–accommodations."

The Court is not persuaded by this argument either.  Plaintiff argues that the regulation in question clearly violated New York law, and should have not been enforceable. This argument ignores the fact that, at the time that Defendant made the employment decision here at issue, the regulation had been enacted and not declared invalid by any Court.  Plaintiff contends that Defendant violated her NYSHRL rights by failing to conclude, independently of any court ruling, that the regulation was invalid and should be ignored.  No such ruling appeared until <u>Bassett</u>, long after the employment decision in question, and <u>Bassett</u>'s injunction was subsequently stayed.  Plaintiff does not plausibly allege that Defendant violated her rights under the NYSRHL by following the law as established.

As such, the Court will grant the Defendant's motion and dismiss the case.  As Plaintiff has admitted facts which make winning her case impossible, the Court will dismiss the action with prejudice and without leave to replead.

## IV.   CONCLUSION

For the reasons discussed above, Defendant's motion to dismiss, dkt. # 8, is hereby **GRANTED** with prejudice and without leave to replead.  The Clerk of Court is directed to

**CLOSE** the case.

**IT IS SO ORDERED.**

Thomas J. McAvoy
Senior, U.S. District Judge

Dated: August 8, 2023